### JAMES SKIPWORTH *v.* THE STATE.
### ED BOLES *v.* THE STATE.

1 THEFT — ROBBERY. — At common law, robbery was regarded as an aggravated species of larceny, and under the Code of this State there is a still closer assimilation between the offences of robbery and theft. See the opinion in full on this subject.

2. SAME. — On trial for theft of property over the value of $20, a conviction may be had for that offence notwithstanding the evidence shows such a "putting in fear" as would have sufficed to sustain a prosecution for robbery.

3. CONTINUANCE. — The law requires of a defendant a strict compliance with its exact requirements upon applications for a continuance. What constitutes legal diligence to enforce the attendance of witnesses is explicitly prescribed by the law itself, and defendants who deviate from its directions must abide the consequences.

4. SAME. — The sheriff of the county wherein the absent witness resides is the proper officer to execute an attachment for his attendance at the District Court of another county. Delivery of the process to the sheriff of the forum is not diligence.

5. INDICTMENT — PRACTICE. — The Code directs that the names of the witnesses on whose testimony the indictment is found shall be indorsed thereupon; but no exception either to the substance or form of an indictment lies for non-compliance with this direction. On suggestion *in limine*, the court should have the omission supplied, but it comes too late in a motion for new trial.

6. THEFT. — Indictment for theft of money alleged the ownership and possession in one D. and one W. The proof showed that they were mercantile partners, and that the bulk of the money was on deposit with them for owners whose want of consent to the taking was not proved. *Held*, that the ownership was well laid in the bailees, and proof that the money was taken without their consent was sufficient on that part of the case.

APPEALS from the District Court of Burleson. Tried below before the Hon. A. S. BROADDUS.

By separate indictments, the appellants were charged with the theft of a large amount of money in silver half-dollars and United States currency, alleged to be the property of James L. Dean and J. C. Wamble, and to have been taken from their possession on November 20, 1879, by force and arms and fraudulently. On their respective trials the appellants were found guilty, and terms of ten years each in the penitentiary were impartially awarded them.

It was shown by the evidence that Dean and Wamble, the alleged owners, were merchants and partners who kept a country store in Burleson County. Late in the afternoon of November 20, 1879, while Dean was waiting on a customer, three other customers came in and inquired for corn or oats. They awaited patiently the departure of their predecessor, and Dean then proposed to furnish them the forage, but they preferred to await the arrival of their wagon, and he turned his attention to a molasses-barrel in the rear of the room. While thus engaged he was approached by two of the party, and one of them, addressing him, said, " Your time is about up ; throw up your hands." Failing his instant compliance, Dean received a severe blow in the rear from the third man of the party. The blow knocked him against the barrel, and he threw up his hands as soon as he could. One of the men then took from his pocket the keys to the money-safe and the front door of the store. Another closed the back and front doors of the house, and took his stand on the inside of the latter. The third man, pistol in hand, kept Dean in the desired position, while he who had taken the keys opened the safe and took therefrom about $400 in silver half-dollar pieces, and about $1,200 in United States currency notes of the denominations of five, ten, and twenty dollars. About $300 of the money belonged to Dean & Wamble, and the remainder had been left with them for safe-keeping by three or four other persons. While the safe was being rifled there was a knock upon the front door, to which one of the insiders replied, " We will be through directly," or, " Will open the door directly."

Having transacted their business, the three men made Dean accompany them through the front door, presented their pistols at three others, from whom the knock had proceeded, and then mounted their horses and rode rapidly away. Dean and the three confederates were the only adult persons in the store while the work was going on, and he had never seen either of the three before that occasion.    Within the following two or three weeks, however, the two appellants and William Robinson were arrested and confined in the jail of Lee County, and Dean was called to interview them. Out of five inmates of the jail he unhesitatingly selected and identified the appellants and Robinson as the men who had done the job.    In this he was strongly corroborated by Wamble and others who saw the three men at and near the store in the course of the afternoon of the day on which the offence was committed.

The appellants nevertheless produced two or three witnesses who swore positively to an *alibi* for each of them and Robinson.    These witnesses fixed the date by a " Baptist supper " which they had all attended in the town of Rockdale on the night of November 19, 1879, and were perfectly certain that the appellants were thirty or forty miles from the store of Dean & Wamble late in the afternoon of the next day.

*S. G. Ragsdale* and *Boone & Cobbs*, for the appellants.

*Thomas Ball*, Assistant Attorney-General, and *W. K. Homan*, for the State.

CLARK, J.    Robbery at common law was esteemed an aggravated species of larceny, and the crown was at liberty to prosecute as for larceny, the only restriction being that if the goods taken were transported to another county, any prosecution in such county was confined to larceny, and could not include the graver offence of robbery, which

was completed in the original county where the act was per-petrated.    1 Russ. on Cr. 868 ; 1 Hale's P. C. 536.    This doctrine has been generally accepted in the American States, and the conviction for larceny is held a bar to further prose-cution for robbery, upon the familiar principle that the prosecution is not entitled to carve different offences out of one transaction and procure convictions for each.    *Hickey* v. *The State*, 23 Ind. 21 ; *The People* v. *McGowan*, 17 Wend. 386 ; *Hoskins* v. *The People*, 16 N. Y. 344 ; *The State* v. *Lewis*, 2 Hawks, 98.

The two offences of robbery and larceny are more nearly assimilated under our Code than at common law.    Under the last-named system, the weight of authority is that the fraudulent taking in robbery must have been from the person (3 Inst. 68 ; 1 Hale's P. C. 532 ; 1 Hawk. P. C. 212 ; 4 Bla. Comm. 242) ; though Mr. East says it may have been from the person of another or in his presence.    2 East's P. C. 707.    The original Code followed the weight of authorities at common law, and required the taking to be from the person (Penal Code, art. 743) ; but by the amend-ment of November 12, 1866, the law was made to read " from the person *or possession* of another ; " and this has since remained unchanged.    Pasc. Dig., art. 2379 ; Rev. Penal Code, art. 722.    And the two offences of robbery and theft of property over the value of $20 are punished similarly.

Theft is the fraudulent taking of personal property from another with intent to appropriate the same to the taker's own use, and robbery is a similar taking for a similar pur-pose, done under additional circumstances of aggravation. That the taking may have been " by assault, or by violence and putting in fear of life or bodily injury," renders it no less a fraudulent taking ; and if the State elects to prosecute simply for the fraudulent taking, the defendant cannot com-plain because the proof shows not only this character of acquisition but something more.    Under the indictment

and the evidence, had the latter shown a sufficient " putting in fear," the court might have instructed upon robbery, and the jury might have found a valid verdict for that offence (Code Cr. Proc., art. 714, sect. 6) ; but this by no means implies that such course was imperatively demanded by the law and the facts in evidence.   The evidence fully supports a verdict for theft, although it might perhaps have been made to support a conviction for robbery.

The action of the court in overruling defendant's applications for continuance is not deemed erroneous.   The law requires of a defendant a rigid compliance with the exact terms prescribed for such applications, and if there is a lack of diligence, apparent from the application or otherwise, in securing the attendance of his witnesses, its mandate is inexorable and the trial must proceed.   In terms most explicit it informs the defendant and his counsel what shall constitute diligence, and if they see fit to rely upon matters outside the law to excuse their non-compliance with the law, they must take the consequences.   The district judge was not authorized to direct them to whom the process for their witnesses should be delivered ; but the law gave them that direction, and informed them that attachments for non-resident witnesses must not be placed in the hands of the sheriff of the forum.   Code Cr. Proc., art. 498 ; *Chaplin* v. *The State,* 7 Texas Ct. App. 87.   Apart from this, the record shows that attachments were issued on December 16, 1879, for the absent witnesses, and that the case was called for trial on December 19th, when the defendant applied for his continuance.   The court postponed the trial until December 23d ; and although the witnesses are alleged to reside within a radius of between thirty and forty miles from the place of trial, no further attempt was made to procure their attendance, and several of them were present at the trial and not placed upon the stand.   From the evidence before us, it does not appear

that the absent testimony could have been of a material character, or that the facts set forth in the application were probably true ; and this is the stand-point from which such applications must be viewed by this court, under the law as it is.

While the statute prescribes that the names of the witnesses upon whose testimony the indictment is found shall be indorsed on the indictment (Code. Cr. Proc., art. 413), yet no mode is designated by which a failure to do so can be reached, and in the absence of further legislation the omission must be held as immaterial.   No exception, either of form or of substance, lies to an indictment on that account (Code Cr. Proc., arts. 528, 529) ; and a motion to quash, strictly speaking, is not known to the Code.   Code Cr. Proc., art. 522.   If such defect can be reached at all, it must be presented in the shape of a suggestion to the court alleging a defect in its records, and the defect may usually be supplied at any time without delay or embarrassment.   It appears from the record that the motion asking that the county attorney be required to indorse on the indictment the names of the witnesses was not in fact brought to the attention of the court until the motion for new trial was filed and presented.   It was then too late.

The ownership of the property was proved as laid, and also the want of consent of both owners.   For the purposes of this prosecution the bailees were the owners ; and, besides, more than enough of their own money was taken to justify the conviction.

The judgment is affirmed.

*Affirmed.*

This opinion applies also to the case of *Ed Boles* v. *The State*, appeal from Burleson County, the judgment in which is also affirmed.